Jr. Mr. Marks, go ahead. Good morning, your honors. May it please the court, Daniel Marks for the defendant appellant? No, I'm going to stop you at that point and turn this over to my colleague, Judge Barron, who has just authored a new opinion of which all counsel need to be aware. I take it from the looks you are both aware of. We're aware of the pending case, your honor. I spoke with Mr. Hood's attorney yesterday. I don't believe any of us have seen the opinion. The opinion came out yesterday. That's fine. You'll want to review it. I think that's right. Why don't you take, unless the presiding judge has any objection to it, why don't you each provide simultaneous briefing within seven days on your view of how Hood impacts the decision. In this case, it relates to the carpenter issue. Absolutely, your honor. If it would be a productive use of the court's time this morning to address the issues other than the IP address information, which is what I understand Hood deals with, we can certainly do that. There's a carpenter issue in this case related to the uploading of images to a file hosting site, and then the issue about the sufficiency of the search warrant. I'm prepared to address those, and we can submit briefing about Hood. It's your choice. Okay. All right. I'll proceed then. Thank you. May I reserve two minutes for a bubble? Yes, you may. Thank you, your honor. As this court is well aware, Carpenter was a milestone that reflects a long evolution of Fourth Amendment jurisprudence for at least 20 years. From Kylo through Jones and Riley, the Supreme Court has wrestled with how to apply old cases to new technologies. One thing we know from Carpenter is that what you cannot do anymore is to cite Smith and Miller and say third-party doctrine and then move on. What Carpenter did not do was to carve out the narrow exception for cell site location information. It refused to extend a now almost 50-year-old doctrine in light of its potential consequences in the digital age. In this case, and it's no criticism of the district court, it was the state of the law at the time, the court essentially said, under the third-party doctrine, the voluntary disclosure of an image online, even just the fact that it has a URL, which is true of every file on the Internet, makes it public for the purposes of Fourth Amendment jurisprudence and thus unprotected. I think that fundamentally misconceives the Fourth Amendment analysis with respect to the images. Put aside the question of whether IP addresses are like CSLI or not, the question of the images is, is posting something, and the record here reflects it was done to a private album on a file-hosting site, does posting that to the Internet, where it has a URL, which conceivably can be typed in by anyone and thus found, whether that makes it a knowing public exposure of the image? So the government seems to suggest that simply by doing a Google search, they could find their way to the images at issue here. Perhaps I should ask the government this, but your input would be useful as well. What would be the nature of that Google search? What would be the input there that would allow that readily available access to these images? It's an excellent question, Your Honor. I don't know the answer, and it's a question I too would like to hear the government's answer, because it's not in the record. No one testified below what it means that Google crawls everything and so everything is available. If that's in fact the case, and I think it may be that that's a bit of a misunderstanding of what Breonna Walker said at the suppression hearing, it's not clear to me that Google actually crawls through private albums as opposed to the public gallery, but even if it does, as we pointed out in the briefs... So I want those questions asked at the suppression hearing, because you do have the employees saying it is possible for the public to access the file in, I think, three different ways, one of which is the Google search. It was your burden, your client's burden... Were you counseled below? No, Your Honor. Okay. To establish a reasonable expectation of privacy, and if there are doubts about whether Google can do it, I would have thought it was up to defense counsel to pursue that. So I think the record below reflects a vague impression that it may be possible to find something on Google that's been posted to defense... From an expert in the field who works... No, Your Honor, from an employee of Imgur who testified about how the site works... I mean, this is not a lay person on the street who doesn't know how Imgur works. This is somebody who works for Imgur. That's right, Your Honor, and my point is that argument, I think, in a world after Carpenter proves too much. If Google, in fact, is crawling the entire Internet and indexing everything, then it's impossible, maybe short of encrypted technology and password protection... The claim isn't that Google would have access to it. The claim is that any ordinary person searching. So Google has access to my Gmail. Correct. But you can't do a Google search and get my email, I hope. I hope so. So the claim here, though, is that this image isn't only something that Google could get, because they index everything, but that an ordinary person could search through Google and see the image. That's very different. Absolutely, Your Honor. Okay, so let me ask it this way. What in the record establishes that this was private? The testimony of Breonna Walker... And what does that testimony tell us that would show that it's private within the meaning of the Fourth Amendment? Okay, so I always go back to my touchstone, which is Cass, which says you still can have a privacy interest in material despite its public accessibility, if you intend to have some privacy. Breonna Walker's testimony was, her understanding was, Mr. Morell uploaded these images to a private album. Yeah. Okay. Does she say he did that? She says she doesn't know. She says it's most likely that he did that. Okay, so is that enough to meet your burden? I believe it is. The only testimony in the record, Your Honor, is that the person... But it may not have happened. That it's most likely and therefore may not have happened. Well, it's always possible it may not have happened, but here the testimony is actually... But do we have a finding? What was the finding by the district court with respect to that question? Never reached it? I think the district court acknowledged and found that it was uploaded that way. The district court says we don't have any idea how Nick Nick gets a hold of this or the anonymous tipster to Nick Nick gets a hold of this, but there's no contrary evidence. There's no debate on that point. Breonna Walker's testimony... Okay, so most favorable to you would be that we take her testimony so the way this was uploaded was through the private album mechanism. Correct. What in the record tells me that that is of any significance for determining that it's private in a Fourth Amendment sense? Because then I think you're dealing with a situation that's exactly what Cass is talking about. It's something where the person has made an effort to indicate their desire to keep something private, uploading to a private album, not the public gallery. Nevertheless, it's publicly accessible. But the words private and public are a little bit confusing. The public gallery is equally accessible to the public as the private one. What distinguishes them is whether your images stand alone on your own file or whether they're in a gallery mixed in with other people's images. Is that wrong? I respect that. I think I disagree. My understanding of the difference is that what makes the images in a private album publicly accessible primarily is that there is a URL which, if known, can be typed in by anyone. The problem is those URLs on the record are randomized. And as other circuits have said, it would be statistically impossible to guess them. So the notion is, I upload something to a private gallery. It's only if I engage in limited sharing, if I give that URL to someone else, that I've exposed it to public view. But my view is... Is that in the record? Yes. All the facts you just represented are in the record below? Yes. Brian Walker's testimony is, if it's uploaded to a private album, the URL exists, and the URL can then be shared with someone else. Counsel, apart from the Google search, apart from whether he uploaded in a private gallery or not, you have a service agreement with Imgur, which advises him that if he uses that that violate the law, they will take action to report that. So how... Apart from all these other considerations, which are important, but given that service agreement, how can he have a reasonable expectation of privacy that these arguably pornographic images are protected from disclosure, given the very explicit language of the service agreement? If I may just answer the question, it's a good one. The district court notably found that these are not entirely private because at least Imgur can see them. That was the testimony also from Brianna Walker. Noticeably, the government hasn't made that argument on appeal, perhaps because the terms of service of almost every cloud service provider that anyone knows of and uses include the same or more aggressive language about what these to Yahoo, to Dropbox. So the notion that in a post-carpenter world, that's a voluntary surrendering of your Fourth Amendment rights because a company says in a text that you have to click agree to to get an account, we can search anything you post to our site and if we determine that it's contrary to our terms of service or illegal or inappropriate, we can report you, means you no longer have a reasonable expectation of privacy. I think that's going too far in the world we live in. And I think at a minimum, you'd have a diminished expectation of privacy, but it certainly wouldn't extinguish it altogether. Can I ask you about the age issue that you raised? That's why I saved two minutes. You're on. Okay. You can talk about it as long as it's even better. On the age issue, I take it there is some age that could be represented in an affidavit, at which point you would say it's not necessary to have more than the representation of the age, at least when the age is being given by somebody with a modicum of background in this area, as the person here attests to having. Is that right? Okay. So a couple of things. First of all, I will answer the question, but I don't think we even get to that question in this case, because I think the law of this circuit... No, no, no. Okay. The law of the circuit is not as helpful as you think it is. Okay. So the answer is yes. Presumably there is some age. Yes. So then, okay. What's the age? So I don't know. We have to know. How many 10-year-olds look like 18-year-olds? And when you have an affidavit saying that a number of the children involved in these cases are under age 10, how many under age 10 girls are actually 18? Isn't 10 a perfectly sensible point? I don't think so, Your Honor. Why not? Because, and this is exactly why we have things like the Tanner Scale. This is why we have things like court rulings saying you need to describe physiological facts about kids. This is why we have this court's concern that given the state of technology today, it's incredibly easy to make an 18-year-old person look like a 10-year-old, or to create someone fictitious to begin with. That's why, and Your Honor, if I may, my more elaborate answer beyond yes is we don't get to that question because the law of this circuit is not please provide an adequate description. The law of this circuit is if the images are available, show them to the judge. You're converting the best practice, as you would describe it, into a constitutional rule. We've never gone that far. And furthermore, we haven't been holding that that is our judge-made best practices rule. We've never said that the state court issuance of warrants is bound by that rule. And why would we? We have no power to do that. The only power we have is the direct standard of review under the Fourth Amendment. That's right, Your Honor. This court has consistently said, particularly in cases of child pornography investigations, it's critical to have a neutral magistrate, a judge, decide, given the nature of the alleged offense, whether the image fits within, there's probable cause that the image fits within the statutory definition or not. If I wanted a constitutional precedent that would support the requirement that you must show the image, what would it be? Any case that suggests, that stands for the proposition, that it must be a neutral magistrate, not the law enforcement officer, who makes the ultimate determination of probable cause. Okay, but that's going to just then beg the question of, since you concede, as you should, there is an age at which it would be fine not to have the image, so long as the person represents the age, because the age is just implausible that they would be that off. I just return to my question, do you have anything that will help me, a case that I could analogize to, where the nature of the representation is such that it's not enough for me to just trust, well, no, we don't require factual support for representations and affidavits. You make the factual representation, and I saw the bus. Okay, maybe he didn't see the bus. You don't have to prove, you don't have to have a witness saying he did see the bus. So he's saying this person is effectively not 18 because the person is 10 or 13. If the person he said was 4, I would assume he would say, there's probable cause, you can rely on that representation. So the question is, what would be a case that I could rely on, if I wanted to say you were right, that would help me say, well, the nature of this representation is such, given what we know about human physiology, that you shouldn't just take this as a given. So off the top of my head, Your Honor, I don't have a case. I'd be happy to look for one and provide one, along with the supplemental briefing we'll provide. But I think the critical piece was, the phrase you used was a factual assertion. We don't ask for evidence in support of factual assertions. That's not what the statement appears to be under 10 is, or appears to be under 13. That's a judgment. And, by the way, it's a judgment that the athlete did not have the relevant expertise for. Now, he may have worked with the ICAC for a number of years, but this Court has said that the relevant expertise for these purposes is expertise in things like computer graphics. I understand. I'm sorry. No, go ahead, Judge, and then I'm going to make a ruling from the bench. Okay, go ahead. His expertise was in dealing with children victims in sexual assault. Even if that's so, I gather this would be your point, that doesn't mean that he's in a position to look at images of young girls and make a judgment from those images of their age. That's a whole different proposition. I gather that is your point. That's absolutely right, Your Honor. And I think there would still be a constitutional question. If he had that expertise, whether that's a judgment call he should make or a judge should make. But, in this case, the record is he did not have that specific expertise to answer this question. Well, there is a response to that, of course. He's trained in sexual abuse of minors. Therefore, he has to have some training under age 18. We are going to decline your offer of further briefing on the point you just raised. We will get simultaneous briefing on Judge Barron's decision, and you are not to go beyond that. All right? Understood. Okay. Thank you. No. Thank you. Good morning, Seth A. Frame for the United States. So, judging from the client's finding as to how Imgur works was as follows as it pertains to privacy. It is impossible to make an image uploaded to Imgur private such that it cannot be seen by any person or can be seen by only the one who uploaded it. But that does seem to not get you all the way that I think you would want to get to, because that suggests that so long as it's possible for another person to see it, under cats, you don't have a reasonable expectation of privacy. But that does seem to push cats pretty far. So, to respond to that, Judge Barron, I think the answer to anyone can see it. That's the problem. So, the problem is a person, let's just look at these facts, and let me identify. I take the point that it's unlike a case where only a limited number of people can see it, and so it's not a case like that. But I think the response back, and I guess, does the record give me any insight into this? There's a theoretical possibility everybody on earth could see it, but since it's really only a theoretical possibility, in a sense, it's been disclosed less widely than the thing that's disclosed for certainty to a small number of people, and how am I supposed to make that judgment? Let me say this. So, cats is the seminal case, the other side, the side. So, that's a wiretap case. Someone's talking in a phone booth, and the government is overcoming what is the apparent box of privacy to use special technology to invade and hear what they're saying. And so, what we have here is someone says to what I'll assume for purposes is a law enforcement agency, here, this is a bad URL. Some law enforcement person sitting at a computer somewhere types that URL and sees it. There's no privacy screen, there's nothing that suggests... How did they get the URL? Someone in the community provided it, and that's all they know about it. So, it's no different... Does it matter that the likelihood of that happening without him voluntarily sharing it is very, very, very, very small? No, I mean... Why not? Because, so, if he shared it with that person, he has disclosed it to another, and then that person... But he didn't. Well, how do we know he didn't? Because that's not how... we don't have any evidence to suggest that's how they obtained it. We're relying on the fact that the sole reason that under cats he has no expectation of privacy is because he put it on Imgur, not because he voluntarily disclosed the URL. No, but the only evidence of how the Imgur works is it's open to anyone who has the URL. So, someone must have gotten it. So, someone has to have gotten that URL. So, either they, as my colleague says, you know, hit the lottery, or the defendant exposed it to them, or someone he exposed it to exposed it to them. I mean, we don't know, but... But who's got the problem there? Well, still, I think... Why can't they... I mean, you have to show that... If you're trying to overcome the idea as an expectation of privacy, you'd have to show that he voluntarily disclosed the URL, wouldn't you? That's incorrect. The defendant has the burden at the threshold to show a reasonable expectation of privacy. And he's standing on the fact that, on this record, there's no indication he shared it. And what I'm saying is, objectively, where a police officer gets a piece of information that's provided by someone in the community, puts that into a computer, and up it pops, overcomes no privacy barrier whatsoever, that is a bad rule. If that's a rule, that's a bad rule. Because what is a police officer supposed to do in that situation? All I know is, a person gave me a URL. I put it into a computer. Voila! I now see a child pornography image. I know nothing else but that. What decision am I supposed to make now, as a law enforcement officer, what my obligation is? Objectively, which is the cat's subjective, objective point, that appears to be open to anyone who wants to see it. Just like the trash outside someone's front yard. It may be buried way down there, but they sort of put it out there. And that's fair game, because what else can we expect that law enforcement officer to do? So I think it would be a very bad rule in these circumstances to say that's private, in the sense that the Fourth Amendment is talking about, because we need to give guidance on what an officer is supposed to do. I don't know what he would do in that situation. I understand that there are other sites to which these images could have been uploaded. He chose not to use those sites. They have greater privacy protections. The particular site he did choose, Imgur, has at least three different ways for the public to get access. So going to the district court's view that he certainly did not meet his burden of taking any steps consistent with having a reasonable expectation of privacy. I would think that that's a relevant factor. Yeah, I think that's a relevant factor. I think Judge Lopez's point about the service terms, they're all relevant factors. And I think the cases that my colleague talks about, I think is the more difficult question, which is, let's assume the private Facebook page, that is locked down, right? So the only way you can get to it is if I give the three of you the password, or friend you. That's the only way you can get to it. There's no other way. That's a harder case. But why? Can you explain the difference between that and the URL? Is the only way you can get to it is if somebody gives you the URL? Because the way you're describing it, why can't we think of the URL as the password? Because the URL is, I as the police officer who's given it, I can't get into it. You just give me the password. I can't get into the private Facebook until you give me the password. And then you give me the password, I type it in, and then I'm in. The way that Facebook works is you have to be the friend. I don't know that anyone can just, I don't want to go too far because I'm misleading Facebook. I don't want to do that. I need to understand something you just said. Maybe you did not mean to say it, or maybe I simply misunderstood. I thought you were saying that once on that tipster line, this agency, government agency, provided the URL, there's no Fourth Amendment issue at all. They type in the URL. They see the pornographic image. They then have to take, that doesn't tell them who put that image there. They have to take further steps which are described. But once that URL address was given to them, there's no Fourth Amendment problem. Did you say that? Is that what you said? Yeah, well, I think that, because I don't think we can ask any more of law enforcement at that point. And all I'm positing is that it is. I'm, maybe I can say something helpful. You're going back to the standard for probable cause as opposed to the question of whether there is any possible privacy interest. So you're saying there's no Fourth Amendment violation, I think is a particular statement about the probable cause standard as opposed to the privacy issue. I think what I'm trying to say, I think, is that when a police officer is provided information from a source, a person in the community, and just enters that information into a computer, knows nothing else but that, and it is, because it is readily available, how can we say that that is private in the Fourth Amendment context where that person has an objective expectation of privacy? Is that true of the password? That's a harder question. But you're just baking into the answer you say, if it's otherwise readily available. Their contention is that the URL is unknowable unless someone shares it with you, just like the password is unknowable unless someone shares it with you. But you say it's a hard question if the law enforcement comes across the password, types it in, finds the private Facebook image. You say that's a hard question. I still would know, Judge Barron, that I'm typing in someone's password. That is different than a publicly available URL, which is just a... What does it mean to say publicly available URL? Anybody can type it in. That's why Internet searches can pick this up. If we type it into our computer, there's nothing private about that. A URL is not a private thing. When I say your password, when we're talking, we understand someone has taken a step to secure privacy. We don't say, here's the URL for an interesting site I found today. You might want to check this out. We don't talk about that as there's some privacy there. No one would think of that as privacy, because it's not a password designed to protect privacy. Counsel, in terms of the significance of the URL tip, it would make a huge difference, would it not, as to how the tipster got that. Obviously, if the individual voluntarily shared it with someone, that would have a dramatic effect on any reasonable expectation of privacy analysis. But if it were taken from him in some unknowing way by somebody in the community, or in the family or something like that, then that would make a huge difference, would it not, in terms of the... I'm not sure. I don't want to agree with that. Because if a private person engages in misconduct, gives it to the police, they don't know about the misconduct, have no way to know the misconduct, and then engage in reasonable law enforcement steps, and nothing happened along that chain that should have put up a red flag that says, hey, this was stolen or private or anything, again, that's a bad rule. I don't know what you expect law enforcement to do in that situation. Can I ask you about the age joint issue? I like to save this for after the time is up. There's an acknowledgment that there's some age. So if it's now a 16-year-old, you could readily see how, gee, there's a risk that that representation of 16 is a good judgment, and that's a good word for it, good judgment, but could easily be wrong. I understand that. Okay, so what am I supposed to do here? I think what's interesting here is the gradations of ages that the officer put in the affidavit. So he says, these ones look to me to be 13 or younger, these ones look to be 10, and someone else of an age unknown, which, based on the way I read it, a probable adult. So baked into that affidavit, read in context, is, I am making judgments. I'm not using... If the officer gave the range, some of these look under 12, some of them look under 17, some of them look like adults, I'd be worried about relying on the, some of them look under 17, wouldn't you? I would, too, but not 12. So what about 13? Well... What's my criteria? It's any game we can play, I understand. Can you say that gives you an objective criteria? When we would expect that someone has gone through puberty such that we can readily identify them as having fully developed. And 10 is not that. But, hey, here's the problem. The officer said that at the motion to suppress hearing, but it's not in the affidavit. No, I heard that. The affidavit said nothing about, I looked for the signs of puberty. Right. That's a good guide to... Or I'd say, helpful guide. And we can't, you know, supplement the affidavit after the fact with what he said at the hearing. That's true. That's true. So I don't think, and I don't understand Judge Le Pen to be saying that. I think what he's saying is, what the officer said comports with the common sense way a magistrate would have read that affidavit, which is when he's saying, someone appears to be under 13... Is that even true of 13-year-olds? What, that they have or have not fully developed? Do you have anything in the record that tells you that? No, we have nothing in the record. I don't know. But 10, I think common sense tells us... I get 10, but he's got 10 and 13. Does that matter? That does not matter because probable cause for one image is sufficient to do the search. Counsel, just very quickly, opposing counsel has said that you have chosen not to rely on the terms of the service agreement with Imgur to argue that there could be no reasonable expectation of privacy in those images that have been uploaded. Is that a fair characterization of your position? No, that's not a fair characterization of my position. It's in the district court's opinion. It's in the district court's opinion. It wasn't a thing that I... So an interesting thing, just as an aside, in my brief writing process, I looked at the current Imgur terms of service. They are much more favorable to the government than the ones that were in play in 2013. And I just didn't find that to be the strongest point only because the ones now say explicitly, private, public, you call it what you want, anyone can see it. Because that's what Imgur does. And I just thought that my strongest argument was the notion that you could find it on the internet, through a search. It was provided by a tixter. I appreciate the candor, but the implication of that would be that Imgur didn't understand its term of service at the time. That was the concern you had. That's my concern. I think it's a relevant fact. I think that it's a composite question. But I think that the real thing is, what did the defendant do to show that these things were private in a way that's objectively reasonable? And the answer is nothing. Thank you, Judge Lynch. Thank you. Mr. Marks, two minutes, is it? Yes, thank you, Your Honor. I'd like to start with what I think is an excellent question that counsel is raising about what should the police officer do with the URL. I think the answer to that is, although we're clearly on uncharted waters here, is that any time a police officer gets information that somebody, a suspect, has something illegal, whether it's child pornography, a gun, drugs, and that illegal item is over there, the officer has an obligation before he or she goes over there and searches that place to look for the image or the drugs or the gun to determine whether it's public or private because the rules for law enforcement conduct differ depending on whether the place where you go to get that thing is public or private. So you can have a URL and still make a good faith effort as a law enforcement officer to determine whether it's in a private album, for example, whether it's behind a password protection, whether it's on a site which does reflect some kind of privacy interest by the user, or whether it's in a public gallery or just posted for anyone to see, whether it's in the public domain in that sense. So I think it's reasonable for that step to be taken as you would with any physical item. You want to get a question, Your Honor? No. And I think that relates to the underlying flaw in the government's view of the Fourth Amendment doctrine as it applies to this case, which is unless something is on the internet version of Fort Knox, unless it's, to use their phrase, and it's one the District Court uses as well, entirely private, the Fourth Amendment doesn't apply. I don't think that's how it works. To Litch's point, there certainly are websites that are more protective than imagery. It's more protective not to put something on the internet at all. The District Court did not its ruling is on the facts of this case the failure on your client's part to show reasonable expectation. I don't view the District Court or the government as asking us to make any broader ruling than that. I understand why you might think it helps your argument to make that point, but nobody's asked us to go further than the facts of this case. If I just may respond to that one point, Your Honor. The language the District Court uses, and it was used again by my colleague, was imagery isn't entirely private. It can't be entirely private. My point is, Your Honor, that's not the Fourth Amendment standard. The Fourth Amendment permits some degree of public accessibility, some degree of sharing, some degree of exposure to the outside world, as long as it's not knowingly exposed to the public. That's my only point, Your Honor. Okay, thank you. We'll get your briefs in seven days.